**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                          **Case No. 8:21-CR-78-TPB-CPT**

**JUAN ANGEL CASTRO ANCHICO**
_____/

**SENTENCING MEMORANDUM IN SUPPORT OF A**
**REASONABLE SENTENCE OF 60 MONTHS**

COMES NOW, the Defendant, JUAN ANGEL CASTRO ANCHICO, through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), hereby moves this Honorable Court to sustain his minor role guideline objection and impose a reasonable sentence of 60 months' imprisonment to be followed by a 60-month term of supervised release. As grounds in support, Mr. Castro-Anchico shows as follows:

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Castro-Anchico is an impoverished 57-year-old Colombian national. PSR ¶¶42, 77-80. Born on January 13, 1964, in Guapi, Colombia, he is one of Elmer Castro and Maria Alejandrina Anchico's six children. PSR ¶¶42-50. Since Mr. Castro-Anchico was 12 years old, he worked "to help his parents" support their large family. PSR ¶42. And leading to his incarceration here, Mr. Castro-Anchico was financially responsible for his elderly and infirm parents. PSR ¶51. Mr. Castro-

1

Anchico's parents are both 84 years old and in very poor health. PSR ¶¶43-44.

His father, who was a fisherman, can no longer work due to age and poor health. PSR ¶43. Mr. Castro-Anchico's mother is also unable to work, suffers from diabetes and thrombosis, and has been confined to a wheelchair for the past 24 years. PSR ¶44. Her severe medical conditions require expensive healthcare, which the family cannot typically afford. *Id.* Besides financially supporting his elderly parents, Mr. Castro-Anchico has been the sole support of his partner of forty years, Mireya Solis. PSR ¶52. Like his parents, she too is in very poor health and unable to work, having suffered a stroke 15 years ago, which required brain surgery. *Id.*

Before his involvement in the criminal conduct that brings him before this Court, Mr. Castro-Anchico tried his best to financially support his parents, partner, and himself working as a fisherman. PSR ¶75. While his income as a fisherman varied, at its peak he earned about $250 USD per month. *Id.* With a monthly rent obligation of $169 USD per month, at best, Mr. Castro-Anchico was left with only $81 a month to feed and support himself, his disabled partner, his disabled parents, and fund his mother's hospital expenses. PSR ¶¶59, 75. Mr. Castro-Anchico found this financial burden impossible to accomplish on his meager fisherman's salary.

Mr. Castro-Anchico was financially desperate when he was presented with an opportunity to participate in the transportation of a quantity of marijuana aboard a small panga style vessel in exchange for the promise of around $13,000. Mr. Castro-

Anchico knew the risk of apprehension and prosecution in the United States but given his critical need for money for his loved ones, he willfully accepted the offer.

Factually, in January 2021, as he struggled to make ends meet, Mr. Castro-Anchico was approached by a person representing a drug trafficking cartel and offered approximately $13,000 USD to help transport a quantity of marijuana on a panga style vessel. PSR ¶17. As a fisherman earning $250 USD per month, the sum he was offered would have taken him over 4 years to earn through fishing. PSR ¶75. While $13,000 may not seem like a lot of money, for Mr. Castro-Anchico it represented a significant and life-changing way to support his family and pay for his mother's expensive medical bills and anticipated future burial expenses. PSR ¶21.

After a much-needed $1,832 USD upfront payment, Mr. Castro-Anchico boarded a small panga vessel with Luis Carlos Caicedo Renteria, which was already loaded with bales of wrapped marijuana. PSR ¶¶14, 17. Luis Carlos Caicedo Renteria (who was under the age of 18) was the Captain of the vessel and Mr. Castro-Anchico was his single crewman, hired to accomplish the sole task of assisting the Captain during the overseas voyage. PSR ¶16. Tragically for Mr. Castro-Anchico and his family, the critical financial payout did not materialize as the panga vessel was apprehended by the United States Coast Guard. PSR ¶¶15-16.



Specifically, on February 2, 2021, while traveling in the international waters of the Eastern Pacific Ocean, the vessel was spotted by a military patrol aircraft. PSR ¶15. A helicopter and small boat were launched from a nearby United States Coast Guard cutter and the vessel was apprehended. PSR ¶¶15-16. Aboard the vessel, the Coast Guard discovered the two-man crew—Mr. Castro-Anchico and Mr. Caicedo-Rehnteria—and 21 bales of marijuana. PSR ¶16. The 21 bales of marijuana were determined to weigh at least 400 KG but less than 700 KG. PSR ¶16. Because the Captain of the vessel was under the age of 18, he was turned over to the authorities in Colombia.

The less culpable 57-year-old Mr. Castro-Anchico was brought to the Middle District of Florida and, on February 24, 2021, was charged by indictment with

conspiracy to possess with the intent to distribute 100 kilograms or more of marijuana while on board a vessel subject to the jurisdiction of the United States and with possession with the intent to distribute 100 kilograms or more of marijuana while on board a vessel subject to the jurisdiction of the United States. PSR ¶¶1-3.

Mr. Castro-Anchico, upon appointment of counsel, immediately cooperated with the government and truthfully debriefed on his and others' involvement in the conspiracy. On July 1, 2021, pursuant to a written plea agreement, which contained a cooperation provision, he entered a guilty plea to the conspiracy charge (Count One). PSR ¶¶5-7. On July 7, 2021, this Court accepted Mr. Castro-Anchico's guilty plea and adjudicated him guilty. PSR ¶13. Mr. Castro-Anchico's sentencing hearing is set for Thursday, September 21, 2021, at 2:15 p.m. Doc. 37.

## GUIDELINE CALCULATIONS

Because Mr. Castro-Anchico was involved in a conspiracy to transport at least 400 KG but less than 700 KG of marijuana, his base offense level, pursuant to U.S.S.G. §2D1.1(c)(7) is 26. PSR ¶23. With a 3-level reduction for "acceptance of responsibility," his total offense level is 23. PSR ¶¶30-32. Despite being the least culpable known participant in the conspiracy, Mr. Castro-Anchico's guideline is not reduced for his lesser role in the offense. PSR ¶26.

Eighteen years ago, Mr. Castro-Anchico was one of seven other crewmembers aboard a fishing vessel involved in a conspiracy to transport approximately 1300 KG

of cocaine. PSR ¶35. Following his guilty plea, on February 4, 2004, he was sentenced to 11 years, 3 months. *Id*. Mr. Castro-Anchico completed his federal sentence on April 24, 2013, about 8 years before his involvement in the present offense. *Id.*

Mr. Castro-Anchico is now a criminal history category II offender, and despite truthfully debriefing and otherwise qualifying under U.S.S.G. §2D1.1(b)(18), he is ineligible for the 2-level "safety value" reduction because of his prior federal conviction. PSR ¶37. With a total offense level of 23 and a criminal history category II, the Probation Office suggests that Mr. Castro-Anchico's advisory guideline imprisonment range is 51-63 months. PSR ¶82. Because Mr. Castro-Anchico is ineligible for the statutory "safety value" provision (18 U.S.C. §3553(e)), which would eliminate any minimum mandatory penalty, the low end of his advisory range is the 60-month minimum mandatory penalty, and the top range remains 63 months. PSR ¶82.

Mr. Castro-Anchico objects to not receiving a 2-level U.S.S.G. §3B1.2(b) minor role reduction. *See* PSR Addendum. If this Court sustains Mr. Castro-Anchico's guideline objection, his total offense level becomes a level 21. With a total offense level of 21 and a criminal history category II, his advisory range becomes 41-51 months. Because of the 60-month minimum mandatory penalty, Mr. Castro-Anchico's advisory range becomes the 60-month minimum mandatory

6

penalty. In essence, his guideline objection would reduce the top end of his advisory range by 3 months.

## MINOR ROLE GUIDELINE OBJECTION

The minor-role adjustment at §3B1.2(b) applies because Mr. Castro-Anchico is substantially less culpable than the average participant. The guidelines provide for a two-level downward adjustment "[i]f the defendant was a minor participant in any criminal activity . . .". U.S.S.G. §3B1.2(b). The adjustment applies when the defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 cmt. n.3(A).

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

*Id*.

The commentary directs courts to consider five factors in considering a defendant for a minor-role adjustment:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.3 cmt. n.3. Having listed these five factors, the commentary provides an exemplary case for the minor-role adjustment: "For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* Further, "[t]he fact that a defendant performed an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id.*

In measuring a defendant's culpability against other participants, the universe of participants is limited. *See United States v. De Varon*, 175 F.3d 930, 944 (11th Cir. 1999). "[T]he district court should look to other participants only to the extent that they are *identifiable or discernable* from the evidence." *Id.* (emphasis added).

"The conduct of participants in any larger criminal conspiracy is irrelevant." *Id*.[1]

Here, Mr. Castro-Anchico is substantially less culpable than the other discernable participants. One easily identifiable more culpable participant is the Captain of the panga, Luis Carlos Caicedo Renteria. At all times Mr. Castro-Anchico reported to the Captain who exercised all decision-making authority during the voyage. Another more culpable participant in the offense is the individual who recruited Mr. Anchico-Castro and the Captain to participate in the conspiracy. The recruiter exercised discretionary decision-making authority to identify potential mariners and then made promises of payment on behalf of the sellers of the cocaine.

Down the line, each of the commentary's factors favor a minor-role finding for Mr. Castro-Anchico. He had no concept of the scope or structure of the criminal conduct, such as where the drugs would go after the trip or to whom they would be delivered. He was not involved in planning or organizing the trip. He had no decision-making authority or influence before or during the trip. The nature and extent of his participation involved no responsibility or discretion. And the extent to

---

[1] *De Varon*'s limitation is without textual basis and was in error. Nothing in the guideline or its commentary prevents a court from considering a participant who undoubtedly exists but who is not "identifiable or discernable" to the court or to a defendant. For example, the drugs' proprietary owners no doubt exist, even if they are not "identifiable or discernable" from the evidence, and nothing in the Guidelines Manual limits the court from considering them. That said, *De Varon* is binding on this Court. *See generally United States v. Cruickshank*, 837 F.3d 1182, 1192-95 (11th Cir. 2016).

which he stood to benefit from his participation was $13,085—a sum far less than the value of even one of the over 400 KGs of marijuana he was tasked with transporting.

Mr. Castro-Anchico matches each example case the Commission holds out as good minor-role candidates. First, his "participation in the offense was limited to transporting or storing drugs" and he is held accountable "only for the quantity of drugs [he] personally transported or stored." *See* U.S.S.G. §3B1.2 cmt. n.3(A). Second, he did not have a proprietary interest in the drugs and was "simply being paid to perform certain tasks." *See* U.S.S.G. §3B1.2 cmt. n.3(C). The minor role reduction therefore applies. With a 2-level U.S.S.G. §3B1.2(b) reduction, the minimum mandatory penalty of 60 month becomes both the top and bottom of the guideline range. This Court should impose a 60-month minimum mandatory sentence.

## A 60-MONTH SENTENCE IS REASONABLE

As a 57-year-old nonviolent offender responsible for supporting his disabled wife and parents, a sentence of 60 months will be "sufficient but not greater than necessary" to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a). The government has agreed to not oppose a 60-month low-end sentence for Mr. Castro-Anchico. Doc. 26.  He is before this Court as an impoverished individual who, out of financial necessity, agreed to participate in the transportation

of a quantity of marijuana aboard a panga style vessel subject to the jurisdiction of the United States.

He was promised around $13,000 to participate in a marijuana transportation on the high seas. This was a greater sum of money than Mr. Castro-Antonio could earn over 4 years of hard labor as a fisherman. Given his family's poverty and medical crises, the financial need was too great and the promise of temporary financial security too strong. As a result, Mr. Castro-Anchico participated in unlawful activity. His participation did not lead to life-changing prosperity. Instead, he received only $1,832 and the prospect of serving a significant term of imprisonment for the second time in his life.

It is suspected this Court will be most troubled by this being Mr. Castro-Anchico's second offense involving the transportation of drugs. The first time occurred 18 years ago when he, along with 7 other crew members, were employed on a fishing vessel involved in the transportation of over 1,000 KG of cocaine. Notwithstanding Mr. Castro-Anchico's prior criminal history, a 60-month sentence is reasonable because his prior criminal history has contributed significantly to increasing his advisory guideline imprisonment range.

Because of Mr. Castro-Anchico's 2003 criminal conviction, his criminal history category has increased, and he is ineligible for the benefits of safety value. These two factors have enlarged his advisory guideline range from a low-end of 37

months to the 60-month minimum mandatory penalty, an increase of nearly two years in punishment (23 months). The Commission has taken into consideration Mr. Castro-Anchico's prior criminal history, which this Court should find establishes the reasonableness of imposing the minimum mandatory 60-month penalty without the need for this Court to vary above the jointly recommended low-end guideline sentence.

It cannot be disputed this is the second time in his life Mr. Castro-Anchico has participated in a serious criminal offense for which there should be a significant penalty. The question becomes for this Court: how much must Mr. Castro-Anchico and his family pay for him being tempted by the promise of significant wealth during a period of severe financial struggle?

Mr. Castro-Anchico has accepted full responsibility for his lesser role in the offense and has sought to mitigate his wrongs by pleading guilty and cooperating promptly. Given the significant decriminalization of marijuana throughout the United States and the World, the lesser role Mr. Castro-Anchico played in the criminal conduct, and the relatively minimal financial gain he was to receive for his role in the offense, it is respectfully submitted that a minimum mandatory sentence of 60 months followed by 5 years of supervised release will be more than sufficient to punish Mr. Castro-Anchico for his moment of weakness during a period of financial hardship.

WHEREFORE, Mr. Castro-Anchico moves this Honorable Court to sustain his minor role objection and to impose a 60-month sentence of incarceration to be followed by a 60-month term of supervised release.

DATED this 14th day of September 2021.

Respectfully submitted,

A. FITZGERAL HALL, Esq.
FEDERAL DEFENDER

/s/ Adam B. Allen

Adam B. Allen, Esq.
Florida Bar No.0998184
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA E. Jackson Boggs

/s/ Adam B. Allen
Adam B. Allen, Esq.
Assistant Federal Defender